ZEICHNER ELLMAN & KRAUSE LLP
*Attorneys for 270 Greenwich St. Associates LLC*
*101 Warren St. Associates LLC*
*89 Murray St. Associates LLC*
575 Lexington Avenue
New York, NY 10022
Telephone (212) 223-0400
Peter Janovsky, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| In re: | Chapter 11 |
|---|---|
| HRH CONTRUCTION, LLC,<br><br>         Debtor. | Case No.: 09-23665 (RDD) |

**DECLARATION IN OPPOSITION TO THE DEBTOR'S MOTION
FOR FINAL ORDER AUTHORIZING USE OF CASH COLLATERAL**

Edward J. Minskoff, pursuant to 28 U.S.C. § 1746, declares as follows:

1. I am the Managing Member of 270 Greenwich Holdings LLC, which is the managing member of 270 Greenwich Street Associates LLC ("270 Greenwich"), 101 Warren Street Associates LLC ("101 Warren") and 89 Murray Street Associates LLC ("89 Murray") (collectively, "270 Owners"), creditors and parties-in-interest in the above-captioned Chapter 11 bankruptcy case. I make this Declaration in

opposition to the motion of the above-captioned debtor (the "Debtor") for a final order authorizing use of cash collateral (the "Motion").

The Project

2. 270 Greenwich manages and owns the retail units of The Warren Street Condominium, a mixed-use real estate project located on the west side of Greenwich Street between Warren Street and Murray Street in downtown New York City (the "Property"), for which the hard costs were approximately $318 million, and is the development manager for 89 Murray and 101 Warren.

3. On November 14, 2005, 270 Greenwich, on behalf of 270 Owners, entered into a contractor agreement with the Debtor ("Contractor Agreement") to construct the Warren Street Condominium on all of the tax lots and associated condominium common interests now or formerly owned by 270 Owners (the "Project"). The Contractor Agreement, the General Conditions of the Contractor Agreement (the "General Conditions"), and other documents listed in § 1.1.1 of the General Conditions constitute the overall agreement of the parties (collectively, the "Contract Documents"). A copy of the Contractor Agreement is annexed hereto as Exhibit "A."

4. Pursuant to the Contractor Agreement, the Debtor was hired to act as a construction manager and contractor on the Project. As the contractor, the Debtor hired various construction subcontractors ("Subcontractors") to supply work and materials for the Project. In consideration of the Debtor's services, 270 Greenwich agreed to pay a fee and certain amounts to pay costs related to the Debtor's general

conditions, Contractor's Fee, insurance, and subguard premiums (collectively, the "Debtor's Construction Fee") to cover all costs and expenses incurred by the Debtor in the performance of its obligations under the Contractor Agreement.

5. The Project was managed by Edward J. Minskoff Equities, Inc. ("EJME") as 270 Owners' representative pursuant to a December 14, 2005 agreement between 270 Greenwich and EJME. Pursuant to this agreement, EJME approved the payments owed by 270 Greenwich on the Project.

The Trust Funds for Payment of Subcontractors

6. Commencing in December 2005 and ending in December 2008, the Debtor submitted to 270 Owners and/or EJME, which was acting on behalf of 270 Owners, 36 monthly certified requisitions for the progress payments due for all the various Subcontractors, as well as for the Debtor's Construction Fee. Each of these payment requisitions was signed by Joseph Chan, a member and/or indirect employee of the Debtor and purported to tabulate the amounts that would be paid to each of the Subcontractors out of the funds being requisitioned, as well as the cumulative total amounts previously paid by the Debtor to each of the Subcontractors out of the funds previously requisitioned.

7. Each payment requisition represented to 270 Owners that specified prior payments to the Subcontractors had previously been made, which was a prerequisite to 270 Owners' approving further payments to the Debtor for further disbursement to the Subcontractors, and also that the funds being requisitioned for

3

payment to the Subcontractors would be used by the Debtor to make specified further payments to the Subcontractors.

8. The project architect, Skidmore Owings and Merrill LLP (the "Architect") was required to approve the payment requisitions before payment occurred. The Architect therefore reviewed the same payment requisitions 270 Owners did and relied on the accuracy and truthfulness of the requisitions in determining whether to issue approval.

9. The financing bank for the Project (the "Bank") also required that the payment requisitions be submitted with lien waivers from the Subcontractors to confirm that the Subcontractors had been paid by the Debtor all sums due to them out of the funds previously paid to the Debtor for the Subcontractors' benefit pursuant to the Debtor's prior requisitions. Receipt of these lien waivers was a precondition to the Bank's funding.

10. The Bank accordingly received the same payment requisitions as 270 Owners and the Architect, and, like 270 Owners and the Architect, it relied on the accuracy and truthfulness of the requisitions in disbursing funds under the loan facilities.

11. The Debtor established a trust account "For the Benefit Of" the Subcontractors titled "HRH Construction, LLC FBO 270 Greenwich Street" ("FBO Account") at KeyBank N.A. (Account Number 35-854-1-01168-2) specifically for making payments to all contractors and vendors on the Project and to Debtor for the

Debtor's Construction Fee. The funds paid from the FBO Account constitute "trust funds" under Section Article 3A of the New York State Lien Law.

12. After each payment requisition was approved by the Architect and the Bank, 270 Owners and/or EJME, such requisition was included in a so-called monthly draw package of relevant documentation that was submitted to the Bank for its approval. Upon review and acceptance of the monthly draw package, including the hard costs set forth in the payment requisition, the Bank would draw down funds from its loans to 270 Greenwich, 101 Warren and 89 Murray and deposit such funds in several individual bank accounts in the names of 270 Greenwich, 101 Warren and 89 Murray. The 270 Owners would then transfer the funds into one of the accounts in the name of 270 Greenwich. Thereafter, all costs of the Project would be paid from this 270 Greenwich account.

13. EJME, on behalf of 270 Greenwich, would then instruct the Bank to wire the amount requisitioned by the Debtor to the FBO Account for further disbursement by the Debtor to the Subcontractors to pay for hard costs and to Debtor for payment of the Debtor's Construction Fee.

14. In each instance when the Debtor received the funds from 270 Greenwich, it was required to make payments to the Subcontractors within five (5) business days thereafter, as stipulated in Section 9.2 of the Contractor Agreement. In return, the Subcontractors would provide the Debtor with lien waivers for the work for

which they were receiving payment, which the Debtor would then present with its next requisition to 270 Owners.

The Diversion of the Trust Funds

15. In reality, many of the Debtor's payment requisitions and many of the lien waivers that it presented with those requisitions falsely represented the amounts of the payments previously made or intended to be made to the Subcontractors. Employees and/or other representatives of the Debtor either prepared the payment requisitions and lien waivers containing the false representations or directed that they contain false information.

16. Payments made by 270 Greenwich to the Debtor's FBO Account on the basis of the false statements in the payment requisitions and lien waivers were not paid to the Subcontractors, or were not paid in the full amounts represented in the requisitions, but instead were wholly or partially misapplied, contrary to the Debtor's representations.

17. Annexed hereto as Exhibit "B" is a tabulation of the funds paid to the Debtor for further payment to the Subcontractors, and of the portions of those funds that the Debtor failed to pay to the Subcontractors as required by Article 9.2 of the Contractor Agreement.

18. Column B of Exhibit B sets forth the cumulative total amounts that 270 Greenwich paid the Debtor through Requisitions No. 35 dated October 20, 2008,

and which the Debtor represented in the Debtor's last set of payment requisitions to 270 Owners (*i.e.*, Requisitions No. 36, dated November 20, 2008, copies of which are collectively annexed hereto as Exhibit "C") that the Debtor had paid each of the Subcontractors to date. Column C of Exhibit B sets forth the actual amounts paid to each of the Subcontractors out of funds paid by 270 Greenwich to the Debtor through Requisitions No. 35 (based upon information and/or documentation provided by the Subcontractors). Column D of Exhibit B sets forth the difference – *i.e.*, amounts that the Debtor, in Requisitions No. 36, falsely represented that the Debtor had previously paid the Subcontractors.

19. Column E of Exhibit B sets forth the amounts that the Debtor falsely represented that the Debtor would be paying to the Subcontractors out of the funds being requisitioned in Requisitions No. 36, and were actually paid to Debtor. Column F of Exhibit B represents amounts from Column E 270 Owners have determined based upon information and/or documentation provided by the Subcontractors that have not been paid to date – *i.e.*, amounts that the Debtor, in Requisitions No. 36, falsely represented that the Debtor intended to pay the Subcontractors.

20. 270 Greenwich paid the Debtor the amounts in Column E in reliance on the false representations of the Debtor that the Debtor had previously paid the Subcontractors the amounts it said it had paid them, as tabulated in Column B, and in further reliance on the false representations of the Debtor that the Debtor would pay the Subcontractors the amounts it was currently requisitioning on their ostensible behalf (*i.e.*, the amounts in Column E).

21. Similarly, 270 Greenwich had previously paid the Debtor the amounts in Column B in reliance on similar prior false representations, in a succession of prior payment requisitions, as to the amounts the Debtor had paid the Subcontractors out of funds previously requisitioned and as to amounts it intended to pay the Subcontractors out of the funds it was currently requisitioning.

22. As a result of these false representations, 270 Greenwich paid to the Debtor the sum of at least $4,761,270 for disbursement to the Subcontractors (see Column G of Exhibit B) that the Debtor in reality did not pay to the Subcontractors but which instead was misappropriated for other purposes.

23. By reason of the foregoing, which resulted in 270 Greenwich's making payments that did not reach the required payees and exposed 270 Owners to a risk of being compelled to make double payments, 270 Owners have been damaged by the Debtor in the amount of not less than $4,761,270.

The Debtor's "Secured Lender"

24. The Owner was not aware until July, 2009 that the Debtor purported to have any secured lender, and until July, 2009 was not aware of the existence of Remus HRH LLC or Remus Holdings LLC.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
September 29, 2009

_____