Gregory Sheindlin (GS-9182)
Sheindlin & Sullivan, LLP
Counsel to Alasdair McMullan and Katrina McMullan
350 Broadway, 10th Floor
New York, New York 10013
(212) 625-8030

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:
HRH CONSTRUCTION, LLC,                                         Chapter 11
                                                               Case No.: 09-23665 (RDD)
                     Debtor.
------------------------------------------------------------x
ALASDAIR MCMULLAN and                                          Adv. Proc. No.
KATRINA MCMULLAN a/k/a KATRINA CARDEN,

                     Plaintiff,

          -against-

HRH CONSTRUCTION, LLC,

                     Defendant.
------------------------------------------------------------x

## COMPLAINT TO OPPOSE AND SEEK DENIAL OF DISCHARGE OF DEBT PURSUANT TO 11 U.S..C. §523(a)(6)

Plaintiffs Alasdair McMullan and Katrina McMullan (Hereinafter "McMullans"), by their attorney, Sheindlin & Sullivan, LLP, as and for their Complaint to deny and/or revoke the discharge of the debt of HRH Construction, LLC (Hereinafter "HRH"), the debtor and defendant herein, pursuant to 11 U.S.C. §523(a)(6) alleges:

### NATURE OF THE ACTION

1. This is an adversary proceeding brought pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure (Hereinafter "Bankruptcy Rules") and §523(a)(6) of Title 11 of the United States Code (Hereinafter "Bankruptcy Code") to prevent HRH's discharge of

an individual debt based upon, inter alia, HRH's debt arising from a willful and malicious injury caused by HRH to Alasdair McMullan and Katrina McMullan.

## JURISDICTION AND VENUE

2. On September 6, 2009 (Hereinafter "Petition Date"), HRH filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code with this Court and an Order for Relief was entered.

3. Richard C. Morrissey was appointed as Interim Chapter 11 Trustee and, thereafter, as Chapter 11 Trustee by operation of law at the first meeting of creditors held pursuant to §341(a) of the Bankruptcy Code.

4. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§157 and 1334(b).

5. This is a "core" proceeding as defined by 28 U.S.C. §§157(b)(2)(J) and/or 157(b)(2)(O).

6. Venue of this proceeding is proper pursuant to 28 U.S.C. §§1408 and 1409.

## PARTIES

7. At all times hereinafter mentioned McMullans are individuals currently residing at 350 West 21st Street, Apt. A., New York, New York 10011 located in the City, County and State of New York.

8. McMullans are "creditors" of HRH within the meaning of §101(10) of the Bankruptcy Code on account of, *inter alia*, an, as of yet, indeterminate amount of money owed to McMullans by HRH in compensation for its unlawful conduct. As pleaded in the complaint filed in the State Court action, HRH's unlawful conduct included intentional infliction of emotional distress, trespass, tortious interference with contract, breach of contract, nuisance and negligence with the willful and malicious intent to deliberately

cause injury and/or damages to McMullans. Accordingly, McMullans have standing to commence and prosecute this action under §727(b) and §523(a)(6).

9. Upon information and belief, HRH is a limited liability company, and has an actual place of business located at Two Park Avenue, 18th Floor, New York, New York 10016.

### AS AND FOR A FIRST AND ONLY CLAIM FOR RELIEF

10. In 2004, HRH commenced development and construction of a large scale forty-five million ($45,000,000) dollar fifteen (15) story residential apartment building on a property located at 155 West 21st Street, New York, New York (Hereinafter "Construction Site Property"), and said project was completed in or around the year 2007.

11. Within this same period of time from 2004 through December 31, 2006, McMullans resided in an apartment located adjacent to the construction site at the address of 153 West 21st Street, Apartment GF, New York, New York (Hereinafter "McMullans' Property"). McMullans' Property was located within a brownstone and their apartment consisted of the entire ground floor, basement and a private fence enclosed garden/backyard area.

12. Throughout the construction project, McMullans were subjected to a continuous array of unlawful, intrusive and often dangerous conduct which included but was not limited to the following: Construction workers trespassing in McMullans' backyard and refusing McMullans' demands to leave the property; construction workers cursing and trying to intimidate McMullans when told by McMullans' to cease trespassing on their home property; construction workers removing the metal security and wooden privacy fences enclosing McMullans' backyard without permission or authority; construction workers

destroying McMullan's backyard's garden area including trespassing to cut down the garden's shading tree, destroying its vegetation and uprooting the irrigation system; construction workers leaving dangerous construction debris such as nails and broken boards littered throughout McMullans' backyard; construction workers bolting and boarding the apartment's rear door shut in violation of safety codes and thereby creating a potentially deadly situation if emergency ingress or egress were required; heavy construction equipment breaking through McMullans' apartment wall and causing injuries to Katrina McMullan requiring medical treatment in addition to heavy cabinetry falling off the apartment's wall and breaking their personal property; construction workers flooding McMullans' basement on two different occasions and destroying a significant amount of McMullans' personal property; construction workers storing their equipment in McMullans' backyard and refusing to remove it; construction activity causing cracks and damage to the walls and floors in McMullans' apartment; and the construction workers entering into the backyard area to perform work in violation of the New York State Supreme Court's preliminary injunctive order requiring HRH and their co-defendants including their subcontractors, employees and construction workers from entering onto McMullans' Property, performing work on their property or leaving their equipment, material and debris on said property.

13. On or about May 10, 2006, McMullans commenced an action against HRH and other defendants, titled *McMullan, et. al., vs. HRH Construction, LLC*, et. al., in Supreme Court of The New York State, index number 106432/06 (Hereinafter "McMullan Action"), by order to show cause which included an application for a temporary restraining order and a preliminary injunction.

14. On May 11, 2006, the Court in the McMullan Action issued the temporary restraining order requiring HRH, its co-defendants and their employees, agents and servants including construction workers to cease entering, performing work and storing their equipment, material and debris on McMullans' Property.

15. The opposition papers submitted on behalf of HRH and other co-defendants was supported by the affidavit of its Construction Manager Alex Papadopoulos ("Papadopoulos"), who submitted a sworn statement arguing against the necessity for any type of injunction and specifically swore to the following facts:

> . . . the presence of construction workers was, at all times previously, performed with the permission of the owners of the 153 Property and/or command of law.

Papadopoulos was swearing that there had been no trespassing by HRH or anyone affiliated with the construction project and, therefore, an injunction of any type was not warranted.

16. On June 9, 2006, the Court in the McMullan Action reviewed the parties' motion papers and, thereafter, issued a preliminary injunction ordering HRH, its co-defendants and their employees, agents and servants including construction workers to cease entering, performing work and storing their equipment, material and debris on McMullans' Property. Said Court's opinion specifically mentioned a basis for its decision being "defendants' cavalier attitude and disregard of plaintiffs' rights . . ."

17. On June 9, 2006, HRH's subcontractor lowered scaffolding over the backyard/garden area of the McMullan Property with its ropes and cables extending down onto the backyard/garden area in violation of the temporary restraining order and preliminary

injunction. This conduct constitutes trespassing and a violation of the trial court's order that may give rise to damages for contempt of court sanction.

18. On June 15, 2006, the New York State Supreme Court's Appellate Division, First Department (Hereinafter "First Department"), denied HRH's emergent application for interim relief to vacate and or stay the preliminary injunction pending the perfection of an appeal, and thereafter set a motion schedule for a First Department judicial panel to review HRH's application for interim relief.

19. On July 13, 2006, the First Department's judicial panel denied HRH's emergent application for interim relief to vacate or stay the preliminary injunction pending its appeal.

20. On or about July 13, 2006, HRH and Non-Party 155 West 21st Street, LLC commenced a special proceeding by order to show cause in New York State Supreme Court, County of New York, against McMullan, titled *155 West 21st Street, LLC and HRH Construction, LLC vs. Alasdair McMullan and Extell 21st Street, LLC*, (Hereinafter "HRH RPAPL Action") index number 109627/06, seeking a vacature of the preliminary injunction and a court access license to enter and perform work on the adjacent McMullan Premises pursuant to New York State Real Property Actions and Proceedings Law, Section 881 (Hereinafter "RPAPL §881").

21. McMullan immediately filed a motion to dismiss the HRH RPAPL Action and requested the imposition of sanctions and award of attorneys' fees and costs based conduct in violation of 22 NYCRR §§130-1(2) and (3) committed by HRH's, Co-Petitioner 155 West 21st Street, LLC and their attorneys.

22. On March 1, 2007, the First Department handed down its Decision and Order regarding HRH's appeal relating to the trial court's issuance of a preliminary injunction in the McMullan Action. The First Department denied HRH's appeal and specifically affirmed the trial court's finding and statement that "defendants cavalier attitude and disregard of plaintiffs' rights" justified the issuance of the injunction. The Appellate Division went so far as to describe HRH's argument claiming it was "entitled" to a license under the RPAPL as "risible."

23. On April 17, 2007, the Court in the McMullan Action issued a Decision and Order granting summary judgment in favor of McMullans and against HRH for several of the alleged trespasses. The remaining allegations would be litigated during and after the discovery process.

24. On or about April 16, 2009, the First Department in the HRH RPAPL Action issued a Decision and Order granting McMullan's appeal seeking the imposition of sanctions and reasonable attorneys' fees and costs against HRH, Co-Petitioner 155 West 21st Street, LLC and their attorneys based on their frivolous conduct in violation of 22 NYCRR §§130-1(2) and (3). The First Department imposed the maximum sanction of ten thousand ($10,000.00) dollars against HRH, Non-Party 155 West 21st Street, LLC and their attorneys. The First Department's Decision and Order stated the HRH RPAPL Action was "continued for the sole purpose of harassing the plaintiff [McMullan]." The First Department further stated the "petition as commenced was totally without merit in the law. On the contrary, it was conduct entirely in keeping with HRH/155's cavalier attitude demonstrated by their literal trampling of respondents' property and figurative trampling of respondents' property rights."

25. The amount of reasonable attorneys' fees and costs were to be determined at a hearing that was initially scheduled for November 9, 2009. These attorneys' fees were imposed due to HRH's unlawful harassing behavior in the HRH RPAPL Action.

26. On September 6, 2009, HRH filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code with the instant Court and an Order for Relief was entered.

27. On or about September 16, 2009 and pursuant to a trial court order in the McMullan Action, HRH's Construction Manager, Papadopoulos, appeared to complete his deposition that commenced on August 19, 2009. The attorneys' for the parties including HRH's attorneys were not aware that HRH filed for bankruptcy otherwise we would not have proceeded with the deposition. As mentioned above, Papadopoulos previously submitted an affidavit stating:

> . . . the presence of construction workers was, at all times previously, performed with the permission of the owners of the 153 Property and/or command of law.

During Papadopoulos' deposition, Papadopoulos testified that he does not know what the phrase "command of law" means and does not know why the phrase was placed in his affidavit. Papadopoulos testified that he did not have the permission of the owner of the McMullan Property to enter or perform work on the McMullan Property. Papadopoulos testified that he did not believe his sworn factual statement in his affidavit was true and accurate. More specifically, the question was asked, "What part of the statement in your affidavit do you believe is not true and accurate?" and Papadopoulos answered, "Performing with the permission of the owners of the 153 property and the command of law." When Papadopoulos was asked whether he knew the statement was not accurate on the date he executed the affidavit, Papadopoulos answered, "I don't remember at the

time when I signed this if I remember this statement was in there." Papadopoulos testified that he does not remember why he swore to this statement.

28. HRH was proffering false sworn statements to the trial courts and First Department about a material factual issue that was not only important but central to almost every issue in the two State Court lawsuits.

29. On October 29, 2009, HRH filed Schedules of Assets and Liabilities and Statement of Financial Affairs with the instant Court (collectively, the "Schedules" and each individually, a "Schedule").

30. McMullans were listed as a creditor in Schedule F, and well as the McMullan Action.

30. Upon information and belief, HRH's debt arises from the willful and malicious injury caused by HRH to McMullans, being that said damages were the result of deliberate intentional acts directed at causing the injury without any just cause or lawful excuse.

31. Upon information and belief, HRH's willful and malicious conduct included but is not limited to the following: (1) HRH's willfully engaging in malicious conduct deliberately intended to inflict damages and/or injuries on McMullans including but not limited to attempts to threaten, intimidate, violate the rights and inflict emotional distress upon McMullans, repeatedly trespassing and interfering with McMullans right to use and occupy their property, engaging in conduct intended to deliberately result in the McMullan's eviction from their home and deliberate repeated misrepresentations and frivolous conduct toward McMullans and the courts in their attempt to complete and profit from their construction project.

32. In the McMullan Action, McMullans are seeking compensatory and punitive damages against HRH and their co-defendants, and the allegations underlying said causes of action

specifically plead HRH's conduct was willful and malicious, and therefore these debts should not be discharged.

33. Based upon the foregoing, HRH's application for a discharge of the debt to McMullans should be denied based upon §523(a)(6) of the Bankruptcy Code wherein said debt arose from the willful and malicious injury caused by HRH to McMullans.

WHEREFORE, McMullans request the entry of judgment:

(i) On the First and Only Claim for Relief, denying the discharge of HRH's debt pursuant to §523(a)(6) and §727(b) of the Bankruptcy Code.

(ii) Granting McMullans such other and further relief as this Court may deem just and proper.

DATED:   New York, New York
         December 21, 2009

Yours, etc.,

*[signature]*

Gregory Sheindlin (GS-9182)

Sheindlin & Sullivan, LLP
ATTORNEY FOR PLAINTIFFS/CREDITORS
350 Broadway, 10th Floor
New York, New York 10013
(212) 625-8030